IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. _____ ) |
| PEAR TREE PROPERTIES, LLC, | ) ) ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the plaintiff, Acuity, A Mutual Insurance Company (hereinafter referred to as "Acuity") pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and <u>Merrimack Mutual Fire Insurance Company v. Batts</u>, 59 SW3d 142 (Tenn. Ct. App. 2001), <u>perm. app. denied</u>, and would allege the following as its Complaint for Declaratory Judgment against the defendant, Pear Tree Properties, LLC (hereinafter referred to as " Pear Tree"):

### I. THE PARTIES

1.  Acuity is an insurance company which, at times relevant to this Complaint, was authorized to transact business in the State of Tennessee. Acuity is incorporated under the laws of the State of Wisconsin, with its principal place of business located at 2800 South Taylor Drive, Sheboygan, WI 5308. Acuity is thus a citizen and resident of the State of Wisconsin for purposes of 28 U.S.C. § 1332.

2.  The defendant, Pear Tree, is a Tennessee for profit member managed LLC, having its principal place of business at 4134 Richland Harbor Road, Waverly, Tennessee 37185. Pear Tree may be served through its registered agent for service of process, John

Kevin Rye, 4134 Richland Harbor Road, Waverly, Tennessee 37185. Pear Tree is thus a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

## II.  VENUE AND JURISDICTION

3. As will be more fully set forth below, Acuity issued Policy No. L74127 to Pear Tree, insuring its interest in property located at 601 E. Railroad Street, Waverly, TN 37185, in accordance with policy terms and conditions. A claim against the policy has been submitted to Acuity resulting from damage alleged to have occurred on or about February 22, 2015. Accordingly, venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and 123.

4. This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, as well as Merrimack Mutual Fire Insurance Company v. Batts, 59 SW3d 142 (Tenn. Ct. App. 2001), perm. app. denied. Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. § 1332. The amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of interest and costs.

5. An actual controversy exists between Acuity and Pear Tree within the meaning of 28 U.S.C. § 2201, and this Honorable Court is vested with the power in the instant case to declare and adjudicate the rights and legal relationships of Acuity and Pear Tree with respect to the issues raised herein.

## III.  FACTS

6. On February 22, 2015, there was in full force and effect Acuity Policy No. L74127, issued to Pear Tree insuring its interest in property located at 601 E. Railroad Street, Waverly, TN 37185 (hereinafter "the building"), in accordance with policy terms and

conditions. A true and exact copy of Acuity Policy No. L74127 issued to Pear Tree is attached hereto as Exhibit 1, and is hereinafter referred to "the policy."

7. Pear Tree claims the building was damaged by an ice, snow and rain event that occurred on February 22, 2015.

8. Subsequent to February 22, 2015, Pear Tree notified Acuity that the building had been damaged.

9. Acuity inspected the building and determined that a limited amount of covered damage had occurred. Acuity notified Pear Tree verbally on March 4, 2015, and then in writing on March 25, 2015, that coverage issues existed, and that its Senior Field Claim representative did not observe the extent of damage being claimed by Pear Tree to the building.

10. Acuity's additional investigation of the claim included the retention of a structural engineering firm, EMC Structural Engineers, P.C. (hereinafter "EMC"), to assess the damage and determine the cause of the damage being claimed by Pear Tree.

11. EMC concluded that many of the leaks complained of by Pear Tree pre-existed the date of loss. EMC also concluded that there were several areas of claimed damage that did not relate to the ice and snow event of February 22, 2015. A true and correct copy of the EMC report is attached as Exhibit 2.

12. EMC did recommend limited repairs to return the building to its pre-storm condition. Acuity obtained an estimate of repair corresponding to the recommended repairs suggested by EMC. This estimate of repair was reviewed by EMC and approved as restoring the building to its pre-loss condition.

13. Acuity paid all damages it determined were causally related to the ice and

AU Pear Tree Properties Comp 160211
0010 15174

snow event of February 25, 2015, less the deductible of $10,000.00. Acuity has paid the total sum of $34,598.63 to or on behalf of Pear Tree representing its determination of the covered damages causally related to the ice and snow event of February 25, 2015. This payment was, pursuant to the opinions of EMC, sufficient to restore the building to its pre-loss condition.

14. Pear Tree retained the services of Public Adjuster, Chris Coutras of Coutras & Associates, Brentwood, Tennessee (hereinafter "Coutras"), to act on its behalf and present claims to Acuity.

15. By way of a "(Partial) Sworn Statement in Proof of Loss," the insured, through the intermediary of Coutras, submitted a claim for $962,775.98.

16. Neither the insured nor Coutras ever provided any rebuttal engineering reports to Acuity, despite the invitation to do so. Coutras did, on behalf of the insured, engage in a letter writing campaign to criticize the decision of Acuity, but in doing so made numerous incorrect and misleading statements.

17. Nonetheless, Acuity did consider all information submitted by Pear Tree and Coutras, and by letters dated October 1, 2015 (copy attached as Exhibit 3) and October 23, 2015 (copy attached as Exhibit 4) denied any remaining coverage obligation.

18. However, in its letter of October 1, 2015, Acuity also recognized that the materials submitted by Pear Tree and/or Coutras did establish a difference with respect to the monetary value of the covered loss. In other words, Pear Tree/Coutras and Acuity disagreed on the monetary value of damage that Acuity agreed was covered by the policy.

19. For this reason, Acuity invoked the appraisal process set forth by the following provision of the policy:

> **2. Appraisal**
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
>
> Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

20. Acuity designated Ken Abernathy as its appraiser.

21. However, Acuity did not agree to proceed to appraisal on all disputes. This is because Tennessee law on the scope of appraisal, as set forth in Merrimack Mutual Fire Insurance Company v. Batts, 59 S.W.3d 142 (Tenn. Ct. App. 2001), perm app denied, does not permit the appraisal panel to resolve questions of coverage or causation. The Court specifically noted:

- "An appraiser's authority is limited to the authority granted in the insurance policy or granted by some other express agreement of the parties." Id. at 152.

- "The appraisal clause in . . .[the] policy is limited to determining the 'amount of the loss'-the monetary value of property damage." Id.

- [The appraisal clause] "does not vest the appraisers with the authority to decide questions of coverage and liability." Id.

22. Pear Tree continues to insist that all issues be resolved through appraisal. For instance, by letter dated January 15, 2016 (attached as Exhibit 5), an attorney for Pear

Tree insists that the loss be appraised as a whole.

23. This is improper under Tennessee law, but Pear Tree will not agree to participate in a proper appraisal. Therefore, Acuity is left in a position that it cannot secure an appraisal as to covered items, and the insured, Pear Tree, will not participate in appraisal unless all issues are resolved.

24. Therefore, Acuity has no choice but to pursue this Declaratory Judgment Action. As noted by the Tennessee Court of Appeals:

> One court has suggested that disputed coverage and liability issues are best submitted to the courts before any dispute regarding the amount of the loss is submitted to the appraisers. *Auto-Owners Ins. Co. v. Kwaiser,* 190 Mich.App. 482, 476 N.W.2d 467, 469 (1991).

Batts, 59 S.W.3d 142 at 153.

## IV. ISSUES FOR DECLARATORY JUDGMENT

25. Acuity seeks a Declaration that is has paid all sums due and owing under the policy.

26. In addition and/or in the alternative, Acuity seeks a Declaration that the additional damages claimed by Pear Tree are not covered under the policy, and a judicial determination of all coverage and causation issues prior to further engaging in the appraisal process.

27. Acuity avers that the roof could be restored to its pre-loss condition by the repairs which have already been paid for under the policy.

28. Acuity avers the remainder of the roof was not storm damaged. The policy provides:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

AU Pear Tree Properties Comp 160211
0010 15174

6

Case 3:16-cv-00363   Document 1   Filed 02/23/16   Page 6 of 11 PageID #: 6

> A. **COVERAGE**
>
>> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **CAUSES OF LOSS – SPECIAL FORM**
>
> Words and phrases that appear in italics have special meaning. Refer to Section G, Definitions.
>
> A. **COVERED CAUSES OF LOSS**
>
>> When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:
>>
>> **1.** Excluded in Section B, Exclusions; or
>>
>> **2.** Limited in Section C, Limitations;
>>
>> that follow.

The roof did not sustain an additional covered loss in excess of that for which the insured has been reimbursed.

29. In addition and/in the alternative, the following exclusions are also applicable to the other areas of damage claimed on the roof:

> B. **EXCLUSIONS**
>
>> **2.** We will not pay for loss or damage caused by or resulting from any of the following:
>>
>>> **d.** (1) Wear and tear;
>>>
>>> (2) Rust, or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
>>>
>>> **f.** Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor that occurs over a period of 15 days or more.
>>
>> **3.** We will not pay for loss or damage caused by or resulting from any of the following, 3a through 3c. But if an excluded cause of loss that is listed in 3a through 3c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

      **c.**    Faulty, inadequate or defective:

          (1)    Planning, zoning, development, surveying, sitting;

          (2)    Design, specifications, workmanship, repair, construction, renovations, remodeling, grading, compaction;

          (3)    Materials used in repair, construction, renovation or remodeling; or

          (4)    Maintenance;

      of part or all of any property on or off the described premises.

30.    With regard to the claims for damage to the interior, Acuity has paid all covered damages associated with the ice and snow event of February 22, 2015. Pear Tree has claimed additional interior damage, as well as resulting damage.

31.    With respect to interior damage, the policy limits recovery as follows:

**C.**    **LIMITATIONS**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.**    We will not play for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

******

    **c.**    The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (1)    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

AU Pear Tree Properties Comp 160211
0010 15174

> (2) the loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

32. Acuity has paid all interior damages to which this limitation applies. There is no coverage for any additional interior damages. In addition, Acuity has paid for all interior areas that sustained a "Covered Cause of Loss."

33. The policy also imposes the following conditions upon coverage for any losses that would otherwise be covered under the policy:

> **3. Duties In The Event Of Loss Or Damage**
>
> **a.** You must see that the following are done in the event of loss or damage to Covered Property:
>
> ******
>
> (4) Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses reasonably incurred to protect the Covered Property. We will consider these expenses in the settlement of a claim, but this will not increase the applicable Limit of Insurance. However, we will not consider any expenses incurred in order to protect the Covered Property from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

34. Acuity inspected this property and documented the damage and areas of water intrusion. The claim submissions of Pear Tree reveal that Pear Tree violated the conditions set forth above, in that it failed to take action to repair the roof, resulting in additional damage. The failure to timely use money paid by Acuity to correct the damaged portions of the roof constitutes a violation of the policy conditions.

35. In addition and/or in the alternative, the policy also contains the following exclusion:

> **2.** We will not pay for loss or damage caused by or resulting from any of the following:
>
> *****
>
> **m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

36. The additional damage claimed by Pear Tree is excluded by the applicability of the exclusion set forth above.

37. In addition and/or in the alternative, it appears that Pear Tree is seeking recovery on a replacement cost basis. Acuity avers and alleges it is not obligated to pay replacement cost until such time as repairs have been completed.

38. Acuity avers and alleges it is not appropriate for the appraisal process to determine questions of coverage, causation, or policy liability. Rather, under Tennessee law, the purpose of the appraisal process is only to set the monetary amount of loss. This Court is now empowered and authorized to determine liability issues, and to resolve the questions of causation and coverage which exists under the policy with respect to the above enumerated items of loss. At that time, Acuity requests that this matter be returned to appraisal for resolution of the monetary amounts of damage for any damages, if any, that this Court finds to be covered that have not already been paid for by Acuity.

**WHEREFORE**, the plaintiff, Acuity, A Mutual Insurance Company, prays as follows:

1. That the defendant be required to answer and appear herein;

2. That this Court adjudicate and declare that the damage identified in this Complaint and not previously paid for by Acuity is not covered by the policy and/or is excluded by policy provisions;

3. In addition and/or in the alternative, that this Court adjudicate and declare that damage was caused by the defendant's violation of policy terms and conditions;

4. That this Court adjudicate and declare that the policy does not obligate

Acuity to pay for amounts in excess of the amounts it has paid to date, and upon completion of repairs within the scope of covered damages, to pay any recoverable depreciation;

5. That, upon resolution of any coverage and causation issues, this Court allow the appraisal process to resolve the questions of the monetary value of any covered damage to property if it finds that Acuity has not paid all monies due and owing under the policy; and

6. For such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

_s/Parks T. Chastain_
**PARKS T. CHASTAIN**
Registration No. 13744
**E. JASON FERRELL**
Registration No. 24425
**ASHLEY E. GENO**
Registration No. 033308
Attorneys for Plaintiff, Acuity, A Mutual Insurance Company

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
P. O. Box 23890
Nashville, TN   37202-3890
DIRECT:  (615) 630-7717 (PTC)
DIRECT:  (615) 630-7716 (EJF)
DIRECT:  (615) 630-77128 (AEG)
pchastain@bkblaw.com
jferrell@bkblaw.com
ageno@bkblaw.com

/PTC